# Appendix Exhibit 1

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **LEGACY MEDICAL CONSULTANTS, LP, SUCCESSOR IN INTEREST TO LEGACY MEDICAL CONSULTANTS, LLC,** | § § § § § § § | |
| **Plaintiff,** | § § | |
| **v.** | § § | **Case No. 4:26-cv-00792-P** |
| **DR. DAVID FERTEL,** | § § § | |
| **Defendant.** | § § § § | |

## DECLARATION OF DR. DAVID FERTEL

Now comes Dr. David Fertel and states the following under oath and under penalty of perjury:

1.    I, Dr. David Fertel, am an adult and I make this Declaration based upon my own personal knowledge.

2.    I am a physician with over 40 years of experience.

3.    I am a resident of Oakland County, Michigan.

4.    I maintain a medical practice at an office located in Westland, Michigan.

5.    Neither I nor my practice have any physical presence in Texas.

6.    Neither my practice nor I treat patients based in Texas.

7.    While I have occasionally visited Texas for personal reasons, I do not conduct business in Texas.

8.    My medical practice is operated as D. Fertel, D.O., P.C., a Michigan professional corporation.

1

9. In early 2023, I was looking for a wound care product that would allow my practice to better treat my elderly patients with treatment-resistant wounds. I contacted a Michigan company, Nu Endeavors, LLC, to help my practice source such a product.

10. Nu Endeavors, LLC arranged for several meetings including me and representatives of a company called Revive Medical Distribution, LLC ("Revive"). These meetings were conducted remotely, and I attended them from Michigan.

11. The representatives of Revive indicated that their company was based in California.

12. The representatives of Revive told me that they could provide my practice with highly effective skin substitute wound care products.

13. The representatives of Revive told me that no personal guarantee would be required to order their products.

14. During the meetings, the Revive representatives assured me that my practice would not be required to pay for products if Medicare denied reimbursement for their use.

15. While the Revive representatives indicated that they obtained some products from other suppliers, I understood that the proposed business relationship was between my practice and Revive.

16. As I was skeptical about Revive's claims, I asked to speak with a representative from their supplier.

17. Nu Endeavor, LLC's representatives placed a phone call to Legacy Medical Consultants ("Legacy")'s VP of Sales, Brian Rowan. I spoke briefly with Mr. Rowan and he assured me that my practice would not be required to pay for products if Medicare denied reimbursement for their use.

18. Based on these assurances, my practice began ordering products from Revive.

2

19.    Thereafter, my practice began receiving products from Legacy. All orders for Legacy's products were placed by and received by my practice. Likewise, all invoices for Legacy's products were received by and paid by my practice. I did not personally order or receive any Legacy products. Nor did I personally receive or pay any invoice for Legacy's products.

20.    I have reviewed the two purported contracts attached to Legacy's First Amended Complaint. The Purchase Agreement attached to Legacy's Complaint as Exhibit B purports to bear my signature. However, I did not sign this document, and the signature it bears is not mine. While I acknowledge that the Fulfillment/Rebate Agreement attached to Legacy's Complaint as Exhibit A appears to bear my digital signature, I do not recall signing that document. Neither I nor my practice intended to enter into a contract with Legacy. I would not have intentionally entered into a contract with Legacy in my personal capacity. I understood that my practice was entering into business with Revive.

21.    I did not authorize anyone to sign a contract with Legacy on my behalf.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.


David Fertel (Jul 13, 2026 13:10:51 EDT)

Dr. David Fertel

3

# Dr. Fertel Declaration re Motion to Dismiss 071326

Final Audit Report                                        2026-07-13

| | |
|---|---|
| Created: | 2026-07-13 |
| By: | Nathan Fink (nfink@finkbressack.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAArhIy2lcr4bAqvFrdbwhCpvZgahJWxCVY |

## "Dr. Fertel Declaration re Motion to Dismiss 071326" History

Document created by Nathan Fink (nfink@finkbressack.com)
2026-07-13 - 4:48:41 PM GMT

Document emailed to David Fertel (ferteld@yahoo.com) for signature
2026-07-13 - 4:48:46 PM GMT

Email viewed by David Fertel (ferteld@yahoo.com)
2026-07-13 - 5:06:38 PM GMT

Document e-signed by David Fertel (ferteld@yahoo.com)
Signature Date: 2026-07-13 - 5:10:51 PM GMT - Time Source: server - Signature Appearance Selected: MOBILE_DRAW

Agreement completed.
2026-07-13 - 5:10:51 PM GMT

 **Adobe Acrobat Sign**

4

# Appendix Exhibit 2

Digitalway Services, LLC v. Blue Ridge Healthcare, Not Reported in Fed. Supp. (2023)

Case 4:26-cv-00792-P    Document 17-1    Filed 07/13/26    Page 7 of 16    PageID 268

2023 WL 3480904
Only the Westlaw citation is currently available.
United States District Court,
N.D. Texas, Fort Worth Division.

DIGITALWAY SERVICES, LLC, Plaintiff,

v.

BLUE RIDGE HEALTHCARE, et al., Defendants.

No. 4:22-CV-0602-P
|
Signed May 16, 2023

**Attorneys and Law Firms**

James N. Floyd, The Floyd Firm, Fort Worth, TX, for Plaintiff.

Daniel D. McGuire, FisherBroyles LLP, Coppell, TX, for Defendants.

## OPINION & ORDER

Mark T. Pittman, UNITED STATES DISTRICT JUDGE

**\*1** Before the Court is Defendants' Motion to Dismiss. ECF No. 13. The Court hereby **TRANSFERS** this case to the Southern District of Alabama for the following reasons.

## FACTUAL & PROCEDURAL BACKGROUND

This case involves a contractual dispute between Plaintiff —a satellite television service provider—and Defendants Blue Ridge Healthcare—a Delaware LLC who purchased senior living facilities in Alabama. Plaintiff alleges that Defendants breached a five-year contract made in 2019. Defendant alleges that they were not a party to the contract and only purchased assets belonging to the actual parties to the contract. Defendants only alleged actions involving Texas come through a Texas choice-of-law clause in the contract and its communications, negotiations, and payments to Plaintiff.

Defendants moved to dismiss under Rule 12(b)(6) for failure to state a claim and under Rule 12(b)(2) for lack of personal jurisdiction. The facts and contentions argued under rule 12(b)(6) are immaterial to this motion as—even construing all disputed facts favorably to Plaintiff—this Court does not have personal jurisdiction over Defendants. The Court thus addresses personal jurisdiction alone.

## LEGAL STANDARD

The plaintiff bears the burden of establishing jurisdiction but must present "only prima facie evidence." *Luv N' care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). In determining whether a plaintiff has met its burden, district courts must "accept the plaintiff's uncontroverted allegations as true and resolve all conflicts of jurisdictional facts contained in the parties' affidavits and other documentation in the plaintiff's favor." *Jones v. Artists Rts. Enf't Corp.*, 789 F. App'x 423, 425 (5th Cir. 2019).

## ANALYSIS

**A. Personal Jurisdiction**
District courts may exercise personal jurisdiction over nonresident defendants if two conditions are met: (1) if the forum state's long-arm statute confers personal jurisdiction over that defendant; and (2) if the exercise of personal jurisdiction satisfies the Due Process Clause of the Fourteenth Amendment. *See Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). And because the Texas long-arm statute extends to the limits of federal due process, the two-step process "collapses into one federal due process analysis." *Sangha v. Navig8 Ship Mgmt. Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

A court may assert specific jurisdiction [1] over a nonresident defendant "whose contacts with the forum state are singular or sporadic only *if* the cause of action asserted arises out of or is related to those contacts." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014)). When a plaintiff asserts specific jurisdiction, a court must determine: (1) whether "the defendant purposefully directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there"; and (2) whether "the controversy arises out of or is related to the defendant's conduct with the forum state." *Freudensprung*, 379 F.3d at 343. When a plaintiff successfully satisfies these two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

Digitalway Services, LLC v. Blue Ridge Healthcare, Not Reported in Fed. Supp. (2023)

Case 4:26-cv-00792-P    Document 17-1    Filed 07/13/26    Page 8 of 16    PageID 269

**\*2** As to the first prong, contacts that are "random, fortuitous, or attenuated" do not satisfy the minimum contacts requirement. *Moncrief Oil Int'l. Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007). But a single act by the defendant directed at the forum state can confer personal jurisdiction if the single act gives rise to the claim being asserted. *See Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 418 (5th Cir. 1993). The required analysis must "look to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). Put simply, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is a defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.*

A mere contract with a resident of the forum state is not enough on its own, and thus courts must also look to the context and activity surrounding a contract. *See Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir. 1985). The context and activity surrounding the contract must be substantial enough to avail a defendant of the privilege of doing business in Texas. *See id.* This generally requires more than the mere remittance of payments or interstate communications with a forum plaintiff. *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (finding no jurisdiction where the defendant entered a contract with a Texas resident, sent an agreement and multiple checks to Texas, and engaged in extensive telephonic and written communication with the plaintiff).

In *Stuart v. Spademan*, the Fifth Circuit held that a non-forum defendant's contractual contacts with a Texas plaintiff could not meet minimum contacts. 772 F.2d 1185, 1192–94 (5th Cir. 1985). The court stated that "[t]he random use of interstate commerce to negotiate and close a particular contract, the isolated shipment of goods to the forum at the instigation of the resident plaintiffs, and the mailing of payments to the forum do not constitute the minimum contacts necessary to constitutionally exercise jurisdiction." *Id.*

Like the plaintiff in *Stuart*, Plaintiff's assertion rests almost entirely on the random use of interstate commerce to execute a contract, various payments, and sporadic communications. The context and activity surrounding this contractual relationship hardly avails itself of any of the privileges of Texas outside of its airwaves and electronic banking infrastructure. The only distinguishing factor between these

two cases is the Texas choice of law clause, which has little impact by itself. *See Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) (discussing the minor relevance of the choice of law provisions to minimum contacts analysis). Even with the choice of law clause, minimum contacts are not present. *See Stuart*, 772 F.2d at 1192–94 (finding no indication that the nonresident defendant intended to avail himself of the privilege of doing business in Texas and hence no specific jurisdiction where nonresident defendant contracted with Texas residents, directed letters and phone calls to Texas, shipped prototypes and products to Texas, negotiated a contract with plaintiffs that was to be governed by Texas law, and marketed his product in Texas).

Because Plaintiff fails on the first prong, an analysis of the other elements and fairness is unnecessary. The Court thus lacks personal jurisdiction over Defendants.

**B. 28 U.S.C § 1631 - Transfer**

Because personal jurisdiction is not present, the Court must determine whether the case should be dismissed or transferred to a district where jurisdiction is proper. *See* 28 U.S.C § 1631. In 1982, Congress passed a statute explicitly authorizing district courts to transfer a case when it "finds that there is a want of [personal] jurisdiction ... to any other such court ... in which the action or appeal could have been brought at the time it was filed or noticed." *Id.*; *Franco v. Mabe Trucking Co., Inc.*, 3 F.4th 788, 795 (5th Cir. 2021) ("[W]e join the weight of circuit authority and conclude that the use of the term "jurisdiction" in § 1631 encompasses ... personal jurisdiction.").

**\*3** "A case is 'transferable' [under § 1631] when three conditions are met: (1) the transferee court would have been able to exercise its jurisdiction on the date the action was misfiled; (2) the transferor court lacks jurisdiction; and (3) the transfer serves the interest of justice." *Harutyunyan v. Love*, No. CV 19-41, 2019 WL 5551901, at \*4 (E.D. La. Oct. 28, 2019)

*First*, venue is proper in any judicial district in which any "defendant resides" or where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a)(1–2). Based on the complaint and facts before the Court, the Southern District of Alabama is the appropriate venue for this case. Personal jurisdiction is also appropriate here as most of the business contacts and property is in the state of Alabama. *Second*, as discussed above, this Court lacks

Case 4:26-cv-00792-P    Document 17-1    Filed 07/13/26    Page 9 of 16    PageID 270

personal jurisdiction over Defendants. *Third*, a transfer is necessary here as it would cut the time and expense expended by the parties in continuing this case. Rather than refiling and reserving Defendants—which was a difficulty to begin with—this case can continue in its current posture. These factors, among others—that serve judicial economy and the cost of the suit to both parties—are in the interest of justice.

Transfer is thus necessary.

### CONCLUSION

For the above reasons, the Court **TRANSFERS** this case to the Southern District of Alabama.

**SO ORDERED** on this **16th day of May 2023**.

**All Citations**

Not Reported in Fed. Supp., 2023 WL 3480904

---

### Footnotes

1    Neither party asserts that Digitalway is subject to general jurisdiction. Thus, the Court only addresses whether specific jurisdiction exists.

---

**End of Document**    © 2026 Thomson Reuters. No claim to original U.S. Government Works.

# Appendix Exhibit 3

AK Steel Corporation v. Relco Locomotives, Inc., Not Reported in Fed. Supp. (2016)

Case 4:26-cv-00792-P    Document 17-1    Filed 07/13/26    Page 11 of 16    PageID 272

2016 WL 558698
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

AK STEEL CORPORATION, Plaintiff,

v.

RELCO LOCOMOTIVES, INC., et al., Defendants.

Case No. 15-cv-13430
|
Signed 02/12/2016

**Attorneys and Law Firms**

William C. Schaefer, Driggers, Schultz & Herbst, P.C., Barbara D. Urlaub, Driggers, Schultz, Troy, MI, for Plaintiff.

R. Christopher Cataldo, Jaffe, Raitt, David J. Poirier, Jaffe, Raitt, Heuer & Weiss, P.C., Southfield, MI, for Defendants.

ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS'
MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT [#11]

GERSHWIN A. DRAIN, UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

**\*1**  This case arises out of the contentious business relationship between Plaintiff AK Steel Corporation and Defendants Relco Locomotives, Inc. and Relco Finance, Inc. Presently before the Court is the Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") Pursuant to Rules 8(a) and 12(b)(6), filed on December 8, 2015. Plaintiff filed a Response in Opposition on January 12, 2016. Defendants filed their Reply on January 26, 2016. A hearing was held on February 9, 2016. For the reasons that follow, the Court will grant in part and deny in part Defendants' Motion to Dismiss.

**II. FACTUAL BACKGROUND**

On November 24, 2009, Defendant Relco Finance and Severstal Dearborn, Inc. entered into a Locomotive Lease Agreement wherein Severstal agreed to lease certain locomotives for use at its Dearborn, Michigan facility. *See* SAC, Ex. A. One of the locomotives subject to the Lease Agreement was Locomotive RLCX 1273. *Id*. Severstal was to lease the locomotives from Relco Finance for a period of 84 months, beginning November 24, 2009, and ending November 24, 2016. *Id*. Also on November 24, 2009, Defendant Relco Locomotives and Severstal entered into a Locomotive Maintenance Agreement relative to the locomotives that were leased by Severstal from Relco Finance. *Id*., Ex. B. The Maintenance Agreement provides for Severstal to pay Defendant Relco Locomotives to conduct regularly scheduled or specially ordered maintenance or repair of the leased locomotives. *Id.*

Both agreements were amended by an Addendum to Lease and Maintenance Agreements on October 1, 2010. *Id*., Ex. C. Both agreements were again modified by a Settlement Agreement and Mutual Release of All Claims dated December 21, 2012. *Id*., Ex. D. The Lease Agreement was modified further by an Addendum to Lease Agreement dated February 7, 2013. On September 16, 2014, Plaintiff purchased Severstal. *Id*., Ex. E.

Paragraph 4 of the December 21, 2012, Settlement Agreement provided that Relco Locomotives would replace or refurbish all locomotives then leased to Severstal, including Locomotive RLCX 1273. Paragraph 4 states in relevant part:

> RELCO agrees to replace or refurbish all locomotives currently leased by RELCO to Severstal (with the exception of locomotive 1305), similar to the replacement or refurbishment RELCO previously utilized for locomotive 1305.

*Id*., Ex. D, at ¶ 4. In February of 2013, Severstal was provided with Locomotive RLCX 1305[1] as a replacement for Locomotive RLCX 1273. At the time RLCX 1305 was delivered, Relco Locomotives did not remove RLCX 1273 from Severstal's facility. Plaintiff claims the failure to remove Locomotive RLCX 1273 was in breach of the 2012 Settlement Agreement.

**\*2**  Plaintiff further maintains that sometime in early 2013, an agent of Defendants verbally acknowledged to a representative of Plaintiff that Defendants were responsible for removal of Locomotive RLCX 1273 from Severstal's

AK Steel Corporation v. Relco Locomotives, Inc., Not Reported in Fed. Supp. (2016)

Case 4:26-cv-00792-P    Document 17-1    Filed 07/13/26    Page 12 of 16    PageID 273

premises and promised to do so. Plaintiff has made repeated requests to Defendants to remove RLCX 1273 from the premises. Plaintiff claims that Defendants' breach of the Settlement Agreement has required Plaintiff to store Locomotive RLCX 1273 on its premises and it has lost the use of the rail spur where Locomotive RLCX 1273 is located.

On October 27, 2014, Plaintiff filed the instant action in the Wayne County Circuit Court alleging a single count for breach of contract against Relco Locomotives. Thereafter, Plaintiff moved to amend its complaint to add Relco Finance as a defendant, and the state court granted this request on September 11, 2015. On September 15, 2015, Plaintiff filed its First Amended Complaint, which alleged an amount in controversy in excess of $75,000.00 for the first time. Defendants removed the action to this Court on September 29, 2015. On October 13, 2015, Defendants filed a Motion to Dismiss the First Amended Complaint. Instead of responding, Plaintiff filed the SAC, which is now before the Court.

Immediately preceding the amendment adding Relco Finance to this action, Relco Locomotives notified Plaintiff on August 7, 2015, that it was in default under the Maintenance Agreement dated November 24, 2009. The notice indicated that Plaintiff was in default under Section 3(a) of the Maintenance Agreement for failure to pay invoice number M1077895 in the amount of $3,855.00 for monthly maintenance charges for Locomotive RLCX 1237, as well as invoice number LEM0000377 in the amount of $16,379.31 for repairs to Locomotive RLCX 1272.

In the August 7, 2015 notice, Relco Locomotives demands immediate payment for all maintenance charges as a result of Plaintiff's default pursuant to the terms of the Maintenance Agreement. Relco Locomotives indicates that if payment is not received by September 14, 2015, it "will commence a lawsuit to recover said principal amount, plus interest at the rate of 18% per annum, as its damages[,]" as well as "all costs and expenses, including reasonable attorneys' fees and disbursements...." SAC, Ex. F at 2.

Plaintiff alleges that the invoices referenced by the August 7, 2015 default notice were the subject of an Illinois lawsuit that was dismissed in favor of Plaintiff. Defendants have appealed the dismissal of the case to the Appellate Court of Illinois. In Count II, Plaintiff requests declaratory relief ruling that Relco Locomotives is barred by *res judicata* as a result of the dismissal of the Illinois case. Plaintiff also asks this Court to declare that Plaintiff is not in default

under the terms of the Maintenance Agreement and that Relco Locomotives is not entitled to payment from Plaintiff on invoice numbers M1077895 and LEM0000377. Lastly, Plaintiff seeks a declaration that Relco Locomotives has no standing to assert claims for payment of invoice numbers M1077895 and LEM0000377 because on or about July 25, 2013, Relco Locomotives assigned all of its rights and obligations under the Lease and Maintenance Agreements to GATX Locomotive Group, LLC.

On August 10, 2015, Relco Finance [2] notified Plaintiff that it was in default under the Lease Agreement dated November 24, 2009, pursuant to Sections 3, 13(a) and 15 for failure to return Locomotive RLCX 1273 upon it being replaced by Locomotive 1305. The notice indicated that Plaintiff is indebted to Relco Finance in the amount of $312,000.00 representing holdover rent, plus interest. The default notice further states that Plaintiff is required to pay personal property taxes relating to Locomotive RLCX 1273 for the years 2012, 2013 and 2014 and that the locomotive is damaged and unusable rendering Plaintiff liable for its fair market value of $325,000.00.

**\*3** Plaintiff alleges that the claims referenced by Relco Finance in the August 10, 2015 default notice relative to failing to return RLCX 1273 and holdover rent were the subject of the dismissed Illinois lawsuit that is currently on appeal in the Illinois state courts. Plaintiff complains that despite the dismissal of the Illinois lawsuit, Relco Finance has refused to withdraw its August 10, 2015 default notice, and has threatened to file suit, or otherwise exercise its default remedies under the Lease Agreement. Plaintiff further complains that Relco Finance's claims relative to personal property taxes and damage to RLCX 1273 are claims which Relco Finance could have brought, but failed to bring in the Illinois lawsuit.

In Count III, Plaintiff likewise seeks declaratory relief from this Court finding that *res judicata* bars Relco Finance from seeking compensation related to RLCX 1273. Plaintiff also seeks declaratory relief declaring that Plaintiff is not in default under the terms of the Lease Agreement and that Plaintiff is not obligated to return, or pay for the return of Locomotive RLCX 1273. Plaintiff also asks for a declaration that the July 25, 2013 assignment of Relco Finance's rights to GATX Locomotive Group, LLC precludes Relco Finance's standing to assert its claims relative to Locomotive RLCX 1273.

The last dispute between the parties concerns a January 31, 2013 Settlement Agreement which resolved litigation initiated by Relco Locomotives concerning vandalism to locomotives leased to Plaintiff under a Locomotive Lease Agreement dated May 15, 2006. Plaintiff claims it was permitted to remove certain remote control systems and transmitters from the locomotives prior to returning them to Defendants' facility under the terms of the Settlement Agreement.

On January 24, 2014, Defendants notified Plaintiff that it had breached the Settlement Agreement by returning six locomotives by flatcar instead of "by their own wheels," and by removing the remote control systems and transmitters from the locomotives. Compl, Ex. M. The January 24, 2014 notice demands payment in the amount of $189,151.63. In Count IV, Plaintiff also seeks declaratory relief ruling that Plaintiff is not in breach of the parties' 2013 Settlement Agreement.

## III. LAW & ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief', in order to 'give the defendant fair notice of what the...claim is and the grounds upon which it rests'." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957).) Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'." *Id*. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Id*. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief'." *Id*.

**\*4** The district court generally reviews only the allegations set forth in the complaint in determining whether to grant a Rule 12(b)(6) motion to dismiss, however "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin College*, 259 F. 3d 493, 502 (6th Cir. 2001). Documents attached to a defendant's "motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id*.

### B. Breach of Contract

Defendants argue that the SAC's breach of contract claim should be dismissed for two reasons. First, Defendants maintain that the SAC violates Rule 8(a) because it does not give Defendants fair notice of the conduct for which each is to be held accountable. Defendants complain that it is unclear whether the breach of contract claim is brought against only Relco Locomotives or both Relco Locomotives and Relco Finance. Second, Defendants argue that the SAC's allegations are contradicted by fully integrated written contracts which do not require Defendants to remove RLCX 1273 from Plaintiff's Dearborn facility. As such, Plaintiff fails to state a breach of contract claim upon which relief can be granted.

The Court finds Defendants' first argument to be without merit. There are sufficient factual allegations to put Defendants on notice of the conduct for which they are potentially liable. Any confusion with respect to identifying which entity is responsible for the alleged breach is attributable to the actions of Defendants' employees, who refer to the Defendants collectively as "Relco" in both oral and written communications.

For instance, the 2012 Settlement Agreement that is the subject of the purported breach expressly states that it is between Severstal and "RELCO" Locomotives, Inc., an Illinois corporation, (hereinafter referred to as "RELCO") "its predecessors, successors, parents, subsidiaries, affiliates, and

AK Steel Corporation v. Relco Locomotives, Inc., Not Reported in Fed. Supp. (2016)

Case 4:26-cv-00792-P    Document 17-1    Filed 07/13/26    Page 14 of 16    PageID 275

past and current officers, directors, board members, trustees, employees, agents, attorneys and assigns....” Compl., Ex. D. Additionally, the August 2015 default notice detailing alleged violations by Plaintiff of the Lease Agreement between Severstal and Relco Finance was on Relco Locomotives letterhead and prepared by the Vice President of Relco Locomotives. At the hearing in this matter, Defendant's counsel repeatedly stressed that only Relco Locomotives was a signatory to the 2012 Settlement Agreement. However, the August 2015 default notice suggests that it was Relco Finance that replaced Locomotive RLCX 1273 with Locomotive RLCX 1305.

Further, as alleged in Paragraph 20 of the SAC, representatives of Defendants made subsequent oral representations to Severstal employees that Locomotive RLCX 1273 would be removed by “Relco” without distinguishing between the two Relco entities. As such, whether a single Relco entity, or both entities are responsible for the alleged breach at issue will be clarified during the discovery period in this matter. Dismissal of the SAC on this basis is inappropriate.

Defendants also argue that Plaintiff's SAC should be dismissed for failure to state a claim upon which relief can be granted. Such a motion “is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations.” *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Contrary to Defendants' argument, Plaintiff's SAC presents a plausible breach of contract claim. Defendants' argument ignores the plain meaning of the word “replace,” and overlooks the SAC's allegations that Defendants subsequently made oral representations to Severstal that “Relco” would remove Locomotive RLCX 1273. Defendants also rely on the Lease Agreement, the relevant terms of which apply solely to Plaintiff's responsibilities at the conclusion of the Lease Agreement and which are unrelated to the separate obligations set forth in the 2012 Settlement Agreement.

**\*5** Here, Plaintiff plausibly alleges that the 2012 Settlement Agreement modified the requirement that Plaintiff return Locomotive RLCX 1273 at the end of the Lease term. Paragraph 4 in the Settlement Agreement requires Relco Locomotives to “replace or refurbish all locomotives currently leased by Relco to Severstal....” The Settlement Agreement fails to define the term “replace,” however Merriam-Webster's dictionary defines “replace” to mean “to put something new in the place of.” *See City of Wyandotte v.*

*Consolidated Rail Corp.*, 262 F.3d 581, 586 (6th Cir. 2001) (a court may look to relevant dictionary definitions of a term when a contract term is ambiguous and the contract provides little guidance in interpreting the disputed term).

Defendant also ignores the SAC's allegation that subsequent to the 2012 Settlement Agreement, Defendants representatives indicated that Relco would remove Locomotive RLCX 1273 at Relco's expense. While Defendants maintain that these representations were required to be reduced to writing because the Lease Agreement was a fully integrated contract, the Lease Agreement does not apply to the 2012 Settlement Agreement, which concerned the replacement of locomotives during the pendency of the Lease Agreement. The Lease Agreement did not contemplate the replacement of locomotives during the lease term.

Lastly, Defendant cannot rely on Paragraph 13(a) of the Lease Agreement to argue that Plaintiff was required to return Locomotive RLCX 1273 upon its replacement by Locomotive RLCX 1305. Paragraph 13(a) bears the heading “END OF LEASE INSPECTION/RETURN OF LOCOMOTIVE.” Thus, Paragraph 13(a) relates to the lessee's responsibilities for the return of locomotives at the end of the lease term. It is unrelated to Defendants' obligations to replace locomotives under the 2012 Settlement Agreement while the Lease Agreement was still in effect.

Therefore, accepting Plaintiff's factual allegations as true, the SAC's breach of contract allegations present a plausible claim and Rule 12(b)(6) dismissal is not warranted.

### C. Declaratory Relief

The Declaratory Judgment Act provides that “[i]n a case of actual controversy within its jurisdiction,...any court of the United States, upon the filing of the appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration[.]” 28 U.S.C. § 2201(a). The decision to grant “a declaratory judgment rests in the 'sound discretion' of the court[.]” *Grand Trunk R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 325 (6th Cir. 1984). The policies supporting declaratory relief are “(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.” *Id*. at 326. “The propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal

AK Steel Corporation v. Relco Locomotives, Inc., Not Reported in Fed. Supp. (2016)

Case 4:26-cv-00792-P    Document 17-1    Filed 07/13/26    Page 15 of 16    PageID 276

judicial power." *AmSouth Bank v. Dale*, 386 F.3d 763, 784 (6th Cir. 2004) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995)).

District courts must evaluate the following factors when determining whether to exercise their discretion to grant declaratory relief: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for *res judicata*; (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective. *Id.*

 **\*6** Defendants argue that declaratory relief is improper because the underlying actions that allegedly constitute a breach have already occurred and there is no future uncertainty for the Court to resolve. Additionally, declaratory relief is improper when a prospective defendant attempts to use a declaratory action to become a nominal plaintiff. The Court concludes that Defendants' arguments are persuasive as to Counts II and IV, but not Count III. Therefore, the Court will dismiss Counts II and IV.

### 1. Whether the declaratory claims will settle the controversy?

Defendants do not address whether Plaintiff's declaratory claims will settle the controversy. Plaintiff argues that it has brought all known outstanding claims between the parties, thus there is "no doubt that the declaratory relief [sought by Plaintiff] would settle the ongoing disputes between the parties and clarify the legal relations at issue." Plf.'s Resp. at 12. This factor appears to favor retaining the SAC's declaratory claims.

### 2. Whether the declaratory action will serve a useful purpose?

As to this factor, Defendant argues that declaratory relief is inappropriate here because the alleged harm, namely Plaintiff's purported breach, has already occurred and declaratory relief will not serve any useful purpose. Defendants cite to *Banas v. Dempsey*, 742 F.2d 277, 282-83 (6th Cir. 1984). The circumstances in *Banas* are markedly different than the circumstances here. In *Banas*, the court concluded that declaratory relief was inappropriate

for plaintiffs in a class action because all putative class members had already received benefits owed and there was no longer any substantial controversy between the parties having adverse legal interests "of sufficient immediacy and reality to warrant the issuance of declaratory judgment." *Id.* at 282.

However, Defendants do make a valid point in arguing that a declaratory action will not serve a useful purpose here because the purported breach has already occurred. The useful purpose of declaratory actions is to clarify legal obligations going forward; not to determine an anticipated tortfeasor's nonliability. *AmSouth*, 386 F.3d at 786 ("The courts have also held that it is not one of the purposes of the declaratory judgments act to enable a prospective negligence action defendant to obtain a declaration of nonliability."). Plaintiff's declaratory claims all seek a declaration of its nonliability based on a variety of defenses. While Defendants have not filed suit as threatened in the January 2014 and August 2015 default notices, a threatened lawsuit "is not by itself sufficient for the invocation of the federal power to issue a declaratory judgment." *Id.* (quoting *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002).) This factor does not weigh in favor of maintaining Plaintiff's declaratory claims. However, because Count III is directly related to the issue herein, namely whether Defendants have breached the parties' 2012 Settlement Agreement for failing to remove Locomotive RLCX 1273 from Plaintiff's Dearborn facility, dismissal of this claim would be an inefficient use of judicial resources.

### 3. Whether the declaratory remedy is being used merely for the purpose of procedural fencing or to provide an arena for a race for *res judicata*?

Defendants next argue that a declaratory judgment action is inappropriate where it is filed in order to beat the natural plaintiff to the courthouse and thereby strip the natural plaintiff of its choice of forum. Indeed, the law is well settled that the Declaratory Judgment Act is not to be used as a tool to win "the proverbial race to the courthouse." *AmSouth*, 386 F.3d at 788 (quoting *Hyatt Int'l*, 302 F.3d at 712). The *AmSouth* court explained that "where a putative defendant files a declaratory action whose only purpose is to defeat liability in a subsequent coercive suit, no real value is served by the declaratory judgment except to guarantee to the declaratory plaintiff her choice of forum–a guarantee that cannot be given consonant with the policy underlying the Declaratory Judgment Act." *Id.*

 **\*7** Here, Plaintiff seeks a declaration that defenses it intends to assert in a contemplated lawsuit by Defendants are valid.

12

AK Steel Corporation v. Relco Locomotives, Inc., Not Reported in Fed. Supp. (2016)

Case 4:26-cv-00792-P    Document 17-1    Filed 07/13/26    Page 16 of 16    PageID 277

Plaintiff argues that it did not file its declaratory claims as a tactical maneuver to select the forum of its choice. However, it is evident, that Plaintiff did not file its claims in order to resolve issues of liability that were impacting its ongoing behaviors, but rather as a means to control the forum for resolving the accrued damages dispute. Yet, as to Count III, which deals with Locomotive RLCX 1273, it cannot be said that Plaintiff is attempting to defeat liability in subsequent lawsuit when Plaintiff has alleged its own breach of contract claim concerning this locomotive. This factor likewise favors dismissal of Plaintiff's declaratory claims in Counts II and IV.

**4. Whether the use of a declaratory action would increase friction between federal and state courts and improperly encroach upon state jurisdiction?**

Neither party addresses whether a declaratory action would increase friction between federal and state courts. Defendants only state that they may file a lawsuit in the Illinois state courts raising their claims asserted in the January 2014 and August 2015 default notices. This uncertainty makes it difficult to conclude that a declaratory action would cause friction and improperly encroach upon state jurisdiction.

**5. Whether there is an alternative remedy which is better or more effective?**

Here again the parties fail to adequately address this factor. It is not clear to the Court that there is an alternative remedy that is better or more effective. Defendants maintain that they may file a lawsuit in the Illinois state courts and that the applicable law will be Illinois law. However, this Court is capable of applying Illinois law and therefore it cannot be said that filing suit in the state courts will be more effective or better than entertaining Plaintiff's claims here.

In conclusion, the declaratory claims in Counts II and IV will not serve a useful purpose because Plaintiff is merely trying to obtain a finding of nonliability by raising several defenses in anticipation of a yet to be filed coercive action. This factor, as well as the use of a declaratory action for the purpose of winning the race to the courthouse weigh heavily in favor of declining jurisdiction over Plaintiff's declaratory claims in Counts II and IV. This is true particularly in light of the fact there are no factors that strongly weigh in favor of maintaining Counts II and IV.

## IV. RECOMMENDATION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiff's Amended Complaint [#11] is GRANTED IN PART and DENIED IN PART. Counts II and IV are dismissed from this cause of action.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 558698

---

### Footnotes

1    There appears to be a factual discrepancy concerning when RLCX 1305 replaced RLCX 1273.

2    While the notice discusses the Lease Agreement between Relco Finance and Plaintiff, it appears to have been prepared and sent by Relco Locomotives.

---

**End of Document**                                                © 2026 Thomson Reuters. No claim to original U.S. Government Works.